Good morning, Your Honors. My name is Dennis Cameron. I'm appearing today on behalf of the appellate, Mr. Jermaine Mitchell. I understand this is a 20-minute argument. I'd like to reserve about four minutes of my time. What the Court is dealing with today, and I'm going to talk a little bit about Mr. Mitchell first, because I think the facts of this case are very much intertwined with the law in the case. Mr. Mitchell is about his mid-30s now. He was in his early 30s when this began. He, although we concede, was given a psychiatric evaluation and found competent to stand trial. It also revealed that he has a performance IQ of 62 and a full-scale IQ of 65. He also suffers from schizophrenia. One of the reasons I mention that to the Court at the outset is that the sentencing court, in arriving at the sentence in this case, a sentence that it was bound by statute to make, indicated on the record that they felt under the facts and circumstances of this case that the life without possibility of parole sentence was inappropriate. And that's a fact that's interwoven with the arguments that we make because of this man's mental defects. And by way of argument, simply to put that in some sort of perspective for the Court, the Social Security Administration, in a disability case, has listings. If your IQ is under 70 and you suffer from schizophrenia, you are deemed at that point in time under Section 12 of the listings to be able to do any work in the national economy. That's even simple one-two-step work. So we're dealing with a man who's well into the retarded range and has an ability to follow simple one-two-step instructions. Now, in this particular case, there are a number of areas where we believe that there was error committed. And I'm going to focus on a couple of those that I think are interwoven first with the mental impairments that he has. And that would start with whether he was put on proper notice that the sanctions of 21 U.S.C. 851 were going to result in him being sentenced to a life without possibility of parole sentence. In this case, and it took a long time, he was in custody for 39 months before he got to trial. And I think a person with this type of mental defects becomes focused on things, they become focused on certain issues. He was focused on the idea that he wasn't getting to trial. He wasn't getting his speedy trial. He became absolutely obsessed with it, and I think that's throughout the record. He indicates that he doesn't trust his lawyers, he wants his trial. He went through, I think I'm the fifth lawyer in this case, Your Honor, so he had difficulty communicating even with his own lawyers. The record reflects that he was told that this was going to be a life case, but it was going to be a life case with 20 years to parole eligibility, or the minimum of 20 years. And it was true at the time, Your Honor, but again, he was told that and he focused on that because he listened to the judge. He was never told on the record that I can find anywhere by the judge that because of the second 851 application that he was now looking at life without the possibility of parole. And I think, Your Honor, when you're dealing with somebody who has these mental impairments, that it has to be clear on the record so he can make a decision, especially when he is so focused and with good reason on the fact that he's not getting a speedy trial. Our case law really hasn't gone that far yet, has it, to require a notice under those circumstances? I understand that, Your Honor. This isn't like a Rule 11 where a person is going to plead guilty and we have to tell them that. What case do you rely on that we should extend it just to any case that a person should know what the maximum penalty is? What case would you rely on for that? Well, I think it's extrapolated from case law, Your Honor, but I think what we're really looking at is the decision to decide whether or not you're going to trial. And I think that's encapsulated in our first argument, that the decision to file the 851 enhancement in this case is tainted with vindictiveness. Well, before we get into that, though, it just struck me that perhaps this was really a case better developed on habeas, because then you have the opportunity to discern or to develop what he was told and what he wasn't by his lawyer. Well, Your Honor, I would certainly agree with that position. I think there's a very strong habeas case under the facts and circumstances that we have here today. But we're not at habeas yet, and I'm here to argue that on direct appeal there should be some remedy to get this back. And again, I'll go on now and try to segue into our argument that there was some taint of vindictiveness. And I say that with respect to the prosecutors in this case because I know them. But I think the burden is that you have to show that he was trying to exercise some constitutional right, and as a result of that, they enhanced the penalty. Now, in this particular case, Mr. Mitchell's record was well known at the outset. He had two relatively minor prior drug convictions. I think he did 12 months on one and some 16 months on the other after being given probation because he couldn't successfully complete probation. They knew that at the onset. There was no 851 application. After a period of serious frustration on behalf of the government, because they're trying to get Mr. Mitchell to trial, he's going through lawyer after lawyer. He's focused on many issues, including the fact that he doesn't trust his lawyers. He's not getting along with his lawyers. They upped the ante. They filed the first 851 application. There's nothing changed from the day he was arrested to the date that it's filed, except he wants a trial. But if we accepted your view on that, wouldn't it mean that the government could never make that decision so long as the defendant had asked for anything or done anything in his own defense? I mean, you're kind of asking us to infer that just because he has done something on his own behalf, that anything the government does after that is vindictive. Well, Your Honor, I understand the court's question, and I guess the best way that I can answer it is that the 851 enhancement is so huge. It's basically a death sentence. They're not saying when you're going to die. They're just saying where you're going to die. And the reason that one of the reasons we argued that it was unconstitutional in the application was that that's a decision that should be made at the time that the individual is charged. Because it leaves the court with no discretion whatsoever as to what the sentence is going to be. So you have an across-the-board view that really has nothing much to do with vindictiveness in an individual case, it sounds like. That that has to be a charging decision or it can't be made. No, not exactly, although I can see where you could get to that conclusion from what I just said. What I'm saying is that if it's going to be applied equally, then it should be made based on the case as it stands, whether the person is deserving of that sanction from the outset. When it's reserved as a bargaining tool, which it almost uniformly is, as a practical application, then it should be applied equally. And then when it's made as a charging decision, then it becomes the taint of vindictiveness when you say, well, I really want to go to trial. And they say, well, if you're going to go to trial, then you're going to go to trial for life, even though we didn't think it really merited that at the beginning. That's where I make the distinction, Your Honor. But under your theory, then, that would impede the prosecution's ability to file a superseding indictment, if we carried it to its logical conclusion, right? No, because I think a superseding indictment is different, Judge. Generally, when there's a superseding indictment, it's because there are other facts that have come up or other things. On occasion, it's been argued that a superseding indictment was made as a result of something that happened, shall we say, between counsel, or there's some element of vindictiveness, of lack of cooperation asserted or something like that, denied by the government, but the assertion is made. What's different about that situation? Well, I think the actual outcome is different. If you're talking about a superseding indictment, then you're talking about, well, there may be another charge or there may be something else. If you're talking about the ultimate sanction of life without the possibility of parole, and you're talking about it applying to a person with the mental defects that this individual has, as a result of him being fixated on wanting a trial, then I think the specter of vindictiveness can actually be raised, even though it's just, I think, a reflection of frustration and wanting to get this trial over with in this particular case. Does the record reflect who actually wrote the October 9, 2006, speedy trial letter that your client signed? It's hand-printed. And if he did it, it seems inconsistent with your claims of his mental defects. That doesn't necessarily ñ just because he signed it doesn't mean he actually composed it, but I wondered if we could tell from the record. And, Your Honor, I do not know how it was composed, but I can tell you, having dealt with Mr. Mitchell for the length and period of time, it's certainly printed by him and signed by him. And I'm sure that he had enough discussions with his lawyers to understand he had some issues. And when I say that he is in the retarded stage, clearly he can write and he can communicate, because I spoke with him on a number of occasions. When I'm saying his thought processes are in the retarded range, he fixates on things because he's schizophrenic. At what stage was this, your client's condition, made known to the district court? He had the competency hearing and that was it, or the competency ñ The competency hearing is when it was actually divulged to the district court, Your Honor, because that's what the findings were in the competency report from the psychiatric evaluation. That's all we have, right? That's correct. As far as your Sixth Amendment claim is concerned, the district judge made findings indicating that it was essentially the defendant's fault for these time delays. I suppose the responsibility you have is to show those findings are clearly erroneous. Is that the position you take? That's the position that I believe I have to take, Your Honor. Let me move you over to the Speedy Trial Act. There the district judge found that the unexcused time was only 52 days, well below the 70 days. In reading through the record, there's something in there that's not, at least I couldn't find it in the excerpts, and I want to know whether or not ñ were you the trial lawyer? No, Your Honor, I was his fifth lawyer. I came in at the sentencing. Okay. Well, if you can't answer this, maybe the prosecution can. This is what the court said at page 70 of the transcript. I'm going to file, and I have made copies for counsel, a chart which we prepared based upon the record of the speedy trial, which summarizes, and I intend to summarize through this means, what the excludable time was when the various things occurred. It jived, J-I-V-E-D, it jived with Mr. Cameron's exhibits that he presented. Exhibit A through H are the various stipulations for continuances. Now, then it says, Ms. Clerk, will you file the chart and provide one copy to each counsel? In trying to figure out how the judge got to the 52 days, I think I would have been aided if I had found that exhibit that was filed at that time. But I didn't, and I don't think it's in the excerpt. Are you aware of where that is? Your Honor, it's not in the excerpts, and I really don't know where that particular exhibit is. I can speak to the continuances if the court has questions on those, because I did brief that issue. Well, I'm sure that we would accept a motion to extend the excerpt to include that if it can be found. Okay, thank you. Before you, I know your time is getting down, you probably want to reserve, but would you get to the juror issue? Well, that was my next issue anyhow, Your Honor. And I think the juror issue is probably one of Mr. Mitchell's stronger issues in the brief. And that's because in this particular case, there was a voir dire that took place. One of the jurors stood up, said they'd had an uncle or relative killed by a drug peddler. Now, this is the middle of a drug case. Judge Reed, as his practice, took the behind the curtain, well, behind the sidebar, and made certain inquiries. The juror was at first equivocal, saying, yes, it affects me, but it may not affect me because it actually happened to my family. And then, yeah, it is going to affect me, because the more I think about it, I think it is going to affect me. And that's how they left it. We don't have a juror that's equivocal. She says, this is going to affect me. All right, but then what happens is that Judge Reed says to counsel, anybody have a motion? And everybody said, no, nobody's moving to dismiss for cause. And I think that's really important when you take it in the context of how it happened. Judge Reed, is there a motion to dismiss for cause? Because I think at that point, he believes this juror should be dismissed. Well, he doesn't say that. What he's saying is he would look favorably on it. But defense counsel could have moved for cause at that time. No one asked the question, and defense counsel did not ask to ask the question, can you be fair? All we have is it affects, but we don't know how it affects. I mean, it wasn't quite that clear. In Mexico, there was a drug person who killed her uncle, but no indication of the uncles involved in drugs, or whether it was a drive-by shooting, or whatever. But of course it would affect her, her uncle's been killed. Whether she was a juror or otherwise, she would not be telling the truth if she's completely unaffected. But we don't know how she's affected. No one asks a question, then Judge Reed turns to the lawyers and says, anybody got a motion? No one moves for cause. And so he says, well, something to the effect, I thought I was going to have to back up on this one. So it was clear that he was going to let the lawyers run the case, but he was going to grant it. And then there's no peremptory challenge of her either. Now we're saying that because he opened the questions, got it all before the lawyers, asked them if they have any questions, asked them if they want to move for cause, and let the lawyers make a decision as a lawyer whether that effect is going to help or hurt them, that now we have to reverse the case because he should have done it sua sponte. And I'm having problems with that because I thought Judge Reed was really fair in the way he handled it. So tell me why it is that we should now reverse the case. Well, first of all, Your Honor, I'd say I think the Court has a really good grasp on the colloquy that went on between the judge and the lawyers and the potential juror. But the problem that I have with it is that this is a drug case. The jury panel in total has already heard now that this young lady has had a relative killed by a drug peddler. Now this juror is seated in the jury room with them, and if she votes for guilty, which she obviously did, I think that has an effect on the entire panel because now, at least from my reading of it, they're saying, well, now it's not only whether we think he's guilty, but maybe if we have some doubt and we say not guilty, we're actually spitting on this co-juror's relative's grave. I mean, this has a huge impact. Let me ask you maybe a more theoretical question about this, and that is the following. When there is a response by a potential juror that looks to be not guilty, biased, and the lawyers expressly decline to challenge for cause, does that alter the court's obligation in any way? Does that have an effect on what we should do on appeal? I think it does, Your Honor, and I'm glad the court characterized the question in lawyers, because there were two lawyers there. I think that the defense attorney absolutely should have moved to challenge that juror and didn't. I don't know why. That's a habeas case. But the prosecution, I think, just to protect the record at that point, certainly had an obligation to challenge the juror, and the judge, who had already made up his mind he was going to grant the challenge and was prepared to back up and start again by his own words. But see, that's what I'm having difficulty with, separating out what we have to do on direct appeal from what you can demonstrate in a habeas case. And when a trial judge is faced with a defense lawyer who declines to exercise a challenge for cause, or it turns out a peremptory challenge, I'm not sure what the district court is supposed to do. Is the court permitted to say, well, gee, maybe they have some strategic reason for liking this juror? I mean, I don't know. I guess I just don't know what to make of it. Well, in answer to that question, Judge, I would put it again in the context. They're at sidebar. The rest of the jury panel is not listening to this. The judge, by the context, I think fairly knows this is a juror that should not be seated. And asks, do you have more questions, do you want to give me a peremptory, do you want to ask for excusing this juror? And the judge seems really quite surprised. I agree. Do counsel wish to challenge the juror, and they say no, and then he says neither counsel wishes to challenge for cause? Well, then we'll proceed. I mean, it sounds, I know I'm putting a tone of voice, but I think there's probably some surprise there. And I think, really, if you take it in context, which is what the thrust of my argument is, that when a judge is that is not going to be able to make the decisions necessary in this case without some relevance to what's happening in their personal life. I think the judge clearly expected there to be a challenge. So you're saying the very fact that the judge was surprised shows that the judge knew that there should have been a removal for cause? I think all things taken in context would mitigate towards that, Your Honor. We're basically arguing structural error if you keep a biased juror on regardless of any objection made or not. Now, that is, we haven't gone that far in our case law yet. I understand that you haven't. I'm not necessarily we will or won't, but I mean, this is a new area. But when you're talking in the context of a jury question like we have, the Sixth Amendment guarantees that he's going to have an unbiased jury. And I think that's the judge's province to protect as well as the prosecutor and the defense attorney. Our questions have taken a little bit over, but we'll give you a couple minutes. Tell me, in the jury panel, as it turned out, how many women were on the panel? I have no idea. How many Hispanics? I don't know. What I was trying to think about was why would I want to leave that person on? Now, you have two persons, two attorneys representing the lawyer, the defendant. And I can think in my own mind, as a trial lawyer, that there are occasions when I think that is going to benefit my client rather than not. The assumption we've made here is that there was cause, and he should have done it, should have challenged for cause. But because we have no findings, there's no habeas, so we don't know what they were thinking. I'm not sure that's true, so that's why I was asking how many women were left on the jury and how many Hispanics. There may have been a reason that I couldn't divide. Well, the only way I can answer that, Judge, is I don't know the answer to your question. But I know I've chosen a lot of juries in my time for a lot of different defendants. This lady would have never seen the light of day.  Clear from the government? Mr. Reed? May it please the Court, William Reed, Assistant United States Attorney, District of Nevada. This is a case where certainly the ramifications for this defendant were very, very serious. He had very difficult choices to make in this case from the outset. This is a defendant who is a recidivist felony drug offender. The government has been portrayed in the appellate brief and this morning as a very serious case. Browbeating the defendant, if you will. However, I would suggest that the record reflects something other than that, that in this situation the defendant, the government, gave this defendant every opportunity. And the defendant had every opportunity to plead this matter out if he chose, or if he chose to exercise his constitutional right to a trial and wind up with either an acquittal or something less than the sentence that he chose. Very serious sentence, the most serious other than a death penalty sentence. So refresh me, was a plea offer communicated early or not? Your Honor, I, if you will, parachuted into this case two months before it went to trial. I can't speak to what transpired between prosecutor and defense attorney or defense attorneys in this matter before the trial. I can't speak to that, Tom. Certainly the defendant, there was. Well, let's assume for the sake of argument, and I'm sure that this isn't your case, and I didn't mean to interrupt, but I'm interested in a different point. Let's assume for the sake of argument that you have a, there had been a plea offer on the table of, say, 10 years. And then the defendant files a speedy trial motion or says, no, I want to go to trial. Doesn't that give, doesn't that at least give rise to the inference that it's something that happened in the conduct of the defense and not something that was decided on originally that would cause the 851 to be filed? Your Honor, the response that would be, that is a prerogative, if you will, that the government enjoys, unless this Court tells it it doesn't, that it certainly has the. Your question ahead of me, though, I mean, wouldn't that give rise to the inference that it has something to do with the conduct of the defense or something the defense did rather than new independent information? I mean, the government knew about these, the priors all along. Your Honor, I can't, I can't, I can't say that the government necessarily did know about the priors all along. The first 851, I believe, notice was filed in August or July of 2008. And four, it pertained to a local conviction in Reno, Nevada. The additional, I can't say for certain the government had the additional California felony drug convictions at that time. It may have. I wasn't the prosecutor. I did wind up at trial with the matter. But to answer the Court's question, the, it's part of the plea bargaining process that this Court has authorized, the Supreme Court has authorized, that if a defendant wants to invoke, wants to go to trial, the government has latitude to, if there is evidence to support the charges or the enhancements, the government can bring those additional enhancements or charges, in this case enhancements, if a defendant elects to go to trial. Certainly, this defendant, the government could have brought those, assuming all three prior felony convictions were certified documents or abstracts, certified convictions or abstracts of conviction and other supporting documents were available from the outset, the government could have certainly filed the 851, which only requires two prior felony drug convictions at the outset and there had been no plea bargaining available. However, in this case, the evidence, again, the anecdotal evidence, I wasn't there until the very end, suggests that the government filed the initial 851, one of three felony prior, prior felony drug convictions and waited and gave this defendant every opportunity to engage in, and I was present at the end and did try to engage in, and it's not part of the record, I better be careful about that, but the notice was not filed until the very end when every plea bargaining opportunity had been exhausted. We were very patient. And I gather that in the follow-up question I think you wanted to get to is even if the government was vindictive, you say that's none of our business. I wouldn't phrase it like that, and I feel almost apologetic, but it is part of the give and take part of the process that the Supreme Court has authorized and this Court through the Supreme Court has authorized in case after case that the government, it's not something that's, unless there's some unconstitutional basis for it, it's not something that is forbidden. The government's allowed to engage in bringing additional charges or plea bargaining, if you will, as part of the trial process, Your Honor. Would you mind jumping to the juror issue? I know we want to cover a lot of different grounds, but the question of whether you're leaving a biased juror on, allegedly biased juror on a panel is structural error or not. Yes, Your Honor. I'll be happy to try to address that. Your Honor, again, just as giving a little perspective to it, this case challenged the court in a number of different ways as the record I hope shows the court that there were a lot of challenges to the district court, a lot of challenges to a series of defense attorneys and the government. And when I saw this issue as it was raised in the defendant's opening brief, it's one that caught me aback a little bit, if you will. A lot of all the challenges we encountered throughout this matter, this is not one I necessarily anticipated. However, having said that, Your Honor, in this case, it's one where a defendant as a court has a lot of challenges to the district court. Through its questioning of defense counsel, appellate counsel here, the court gave the defendant every opportunity. Who knows what it was in the defendant's mindset or his counsel or both, I can tell the court, that they collaborated throughout the trial, but who knows what was in their mindset as to why they... What is the trial judge's independent obligation? Let's suppose this juror had been even more explicit and has said, you know, there's no way I could be fair to somebody who I think deals drugs. I just would want them put away for life, and I just don't even know if I could indulge a presumption of innocence. And then let's suppose the counsel didn't challenge for cause. What is the district judge supposed to do? Your Honor, in that situation, where neither the court nor defense counsel nor the prosecution has done their best to rehabilitate such absolute statements, as Your Honor has alluded to, I would have to concede the court would be required to exercise its discretion and challenge the juror for cause. Yes, Your Honor. So the real question here then is how far down that road did this juror go, not whether in the abstract there is ever going to be an obligation on the part of the district court to remove a biased juror? The question then becomes, is it so clear that this juror was biased against the defendant, or is there ambiguity left that would give you wiggle room? Your Honor, the government has taken a position in its response brief, and I maintain that position here today, that it is standard, where part of those prongs is that it requires that the error be clear and obvious under current law. And that's just not the case. It certainly could have been done better. The government is the first to concede this. It could have been done better, just as many things throughout jury trials could have been done better when you revisit them. It wasn't perfect. Do you think that the district court was surprised? Do you agree with my tone of voice? And in looking at that, how the court reacted when the counsel did not challenge for cause? I'm looking at page 32 of the excerpts. Well, you were there. Yes, I was there. And I had quite frankly forgotten that little exchange that's there in the record. And, Your Honor, refresh my recollection by saying that the court was somewhat surprised. But then I think the court gave great deference to defense counsel at the time, and his But did you have to be thinking, what are they doing? I mean, if I were in your shoes, I would say, huh. I mean, at least. Because it just seems so obvious that if someone makes that kind of Maybe you thought they were going to ask for a peremptory or something. But it just seems, you've got a person on trial for life for drug dealing, and somebody who's been murdered by, or has relative murder by drug dealers, and can't put it out, the juror says, it's going to be in my mind. That's pretty tough. Well, it says more than that. It says it would cause her a problem. The court says, she says, I think it would be on my mind to tell you the truth. No, no, I'll be fine. Actually, I'm fine. And then the court says, I need pretty direct assurance on this, if you think it would cause you a problem. And she says, I think it will, now that I think about it. I didn't think about it before, but now that it's in my mind, it's a little different, I think. So, I mean, she does say it's going to cause her a problem, and presumably, from the contest, it's a problem in being fair. That's what the subject of discussion is. Because the court starts by saying, would it affect you in any way in being a fair juror? So, the question is, is she going to have a problem being fair? And she ends up saying, yes, I think I will. Your Honor, she does, in all due respect, she does equivocate, but she doesn't directly say, I cannot be fair. She does indicate it would cause her a problem. What that means exactly. No one asked. There was no follow-up to it. Your Honor, I can't speak to why the defendant didn't ask for the challenge for cause. Certainly the court, the judge has been on the bench many, many years, tried many, many cases, had many, many opportunities. I think his discretion. But as you point out, there was a lot of stuff going on. I mean, it's possible even for a really excellent, really experienced child judge to make a mistake. And if it's serious enough, it's a mistake requiring reversal. And I guess the question is here, did the judge make a mistake? And if so, is it serious enough to require reversal? Your Honor, I don't think that the judge made a mistake. I think the juror's response was ambiguous. It could have been better under the plain error standard. Again, I would just suggest to the court that it's not so clear and not so obvious that it rises to that level of plain error. It could have been done better, certainly. I would concede that first. Could you bring us up to date with the context? Was the juror, prospective juror number 11, put on the stand? Or were they in the judge's chambers? Your Honor, my recollection, the district judge has a unique process with headphones, which both counsel and the judge puts on during the jury selection process when jurors are questioned for dire. And that's the way we do that. But the question is, was the other jurors listening in, or was it separate? It was separate, Your Honor. I believe the juror was separate. The other jurors were not made privy to it, is my recollection. And there's a question in my mind. Did the district judge ask counsel if they have any questions to ask the prospective juror 11? Your Honor, I believe that the judge asked if there were any follow-up questions or challenge for cause. Yes, Your Honor. Did counsel ask questions? No, Your Honor. The court said, do counsel wish me to ask additional questions of the juror? And they said no. Looking ahead, though, as these things say, if defense counsel is unable on habeas to articulate a good reason not to challenge the juror, I'm not encouraging the habeas. I have some degree of confidence, which I can't go into, that the defense counsel may be able to speak to that. Well, I realize the question for us is it doesn't matter whether the issue in front of us right now, it doesn't matter whether there was a strategic issue or not. It's whether or not structural error, basically, for a district court to allow a biased juror to sit, that's the first question. The second one, was the juror, did the record show sufficient bias in this case? Your Honor, and again, Basically, you're arguing number two, that the record doesn't demonstrate sufficient bias to rise to the level of a plain error standard, or meet the plain error standard.  I refer the court to the Mitchell case that this court issued in 2007, a death penalty case, where a juror initially said that she thought the only punishment for certain horrific crimes was death, and then later she was rehabilitated, if you will, someone said, well, death or imprisonment. This kind of went backwards from that. She first said she would do fine, and then said, no, well, on reflection, I won't do fine, which is almost the flip side of Mitchell, where the person starts out saying, I can't possibly be fair, and then says, well, no, I can leave that behind. So it's almost the converse, obverse, I never get that right, but different. But the point, yes, Your Honor, that's correct, the chronology would be converse. However, the point being, in a very serious death penalty case where a juror, potential juror comes right out of the barrel saying death, and there's no challenge for cause with arguably very minimal. The juror was rehabilitated. I mean, or life imprisonment. I mean, that's the critical issue there. Your Honor, with respect to, unless there are any additional questions about the juror issue, again, it's not, in the government's view, plain error under the very strong plain error standard. It's a defendant's burden to establish. Finally, there are a number of other issues that, turning to the speedy trial issue, do you have the exhibit to which Judge Wallace referred? I've seen it, Your Honor. I apologize for not, in my supplemental excerpts of record, making it a part of the supplemental excerpt of record. I will do, endeavor to locate it. Yeah, why don't you, would you mind submitting that to us within 10 days? Yes, Your Honor. I'll locate that. I'm presuming it's on PACER, and I should be able to pull it off PACER, but I won't. Maybe. I missed it going through the record. So if it's there, just let us know. If it isn't, maybe you could file a motion to extend the excerpt. You could do that pretty quick. Yes, Your Honor. I think I can put my hands on it. I'll endeavor to do that. Why don't you try to do it in the next seven days, if you don't mind? Yes. Ten probably takes us over the weekend. If you need more time, let us know. Yes, Your Honor. Or if it's not there, that's fine, too. I have seen it, and I will get a copy from the court and supplement the record. Unless there are any additional questions, there are a number of other issues I'll be happy to try to address. I see I have two minutes left, but I'll yield the floor unless there are any additional questions. Thank you. We have your argument hand, Melissa, for the questions. Thank you. Thank you, counsel. We'll thank both of you for your argument today. The case just deferred will be submitted for decision and will be in recess for the morning. Thank you.
judges: Wallace, Thomas, Graber